IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAS ARCHITECTS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHRIS RAHN and CHRISTINE PASIEKA | : | NO.  20-1276 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                             October 30, 2020

      In this action, Plaintiff, DAS Architects, Inc. ("Plaintiff"), sought damages against Defendants, Chris Rahn and Christine Pasieka (collectively "Defendants"), for breach of contract and other claims related to the alleged non-payment of architectural fees.  See Complaint (Doc. 1).  Presently before the court is Plaintiff's motion to enforce settlement and for entry of judgment (Doc. 19), Defendants' response (Doc. 21), and Plaintiff's reply seeking a court order to compel Defendants to respond to discovery in aid of execution on an expedited basis (Doc. 22).  For the reasons that follow, the motion to enforce settlement and for entry of judgment will be granted in part and denied in part, without prejudice, and the request for expedited discovery will be granted.[1]

---

[1]By Order dated September 11, 2020, the Honorable Gerald J. Pappert signed the parties' stipulated dismissal order, dismissing the action with prejudice and directing that "[j]urisdiction shall remain with Judge Elizabeth T. Hey until December 1, 2020 to address any dispute that may arise with respect to the enforcement of the Settlement Agreement entered into between the parties."  Docs. 15 at 2 ¶ 2, 17 ¶ 2.  Therefore, the motion to enforce the settlement agreement is properly before the undersigned for disposition.  See 28 U.S.C. § 636.  Entry of judgment will be addressed by Judge Pappert.

I. **PROCEDURAL BACKGROUND**

On May 5, 2020, Judge Pappert referred the matter to me for purposes of settlement discussions. Doc. 11. On July 23, 2020, I conduced a video settlement conference during which the parties agreed to settle the case pursuant to terms which were subsequently memorialized in a fully executed agreement dated August 5, 2020. See Settlement Agreement and General Release, attached to Doc. 19 at Exh. A (Doc. 19-4) ("Settlement Agreement").[2] Plaintiffs agreed to pay a total of $300,000 in three equal monthly installments, with the first $100,000 payment due by September 1, 2020. Id. ¶ 1.

Defendants admit that they did not make the first payment due under the Settlement Agreement. Doc. 19 ¶ 10; Doc. 21 ¶ 10. On September 3, 2020, the parties agreed to revise their settlement terms, including an agreement by Defendants to increase the total amount to be paid to $350,000.00. See Revised Settlement Agreement and General Release, attached to Doc. 19 at Exh. B (Doc. 19-5) ("Revised Settlement Agreement").[3] In the Revised Settlement Agreement, Defendants agreed to make a first

---

[2]The settlement conference was conducted pursuant to the customary confidentiality ground rules. However, the parties' agreement was not confidential, and they provided that their agreement could be attached to a motion to enforce. Settlement Agreement ¶ 7; see also Revised Settlement Agreement ¶ 7. Ms. Pasieka did not participate in the settlement proceedings before me, but both counsel and Mr. Rahn confirmed Mr. Rahn's authority on behalf of Ms. Pasieka. Additionally, Ms. Pasieka signed the settlement agreements at issue. Plaintiff (by its principal David Schultz) signed the Settlement Agreement on August 6, 2020, and Defendants both signed it on August 10, 2020. See Doc. 19-4 at 7, 8.

[3]Defendants signed the Revised Settlement Agreement on September 7, 2020, and Mr. Schultz signed it on behalf of Plaintiff the next day. See Doc. 19-5 at 8.

payment of $150,000.00 by September 9, 2020, followed by a second payment of the remaining balance by October 9, 2020.  For each payment that Defendants paid on time, the agreement called for a reduction of $25,000 in the total amount due, such that Defendants could satisfy their obligation by paying the original $300,000 with timely payments.  Id. ¶ 1.

Defendants admit that they did not comply with the terms of the Revised Settlement Agreement and did not make the first payment.  Doc. 19 ¶ 13; Doc. 21 ¶ 13.

At Plaintiff's request I held a telephone conference with counsel on September 11, 2020.  Doc. 14.  Defendants again failed to make any payments.  Doc. 19 ¶ 17; Doc. 21 ¶ 17.  On September 18, 2020, I conducted a second telephone conference with counsel for both parties and Mr. Rahn.  Doc. 18.

According to Plaintiff, after Defendants again failed to comply with payment terms, defense counsel failed to respond to emails inquiring into the timing of payment, and did not object to a draft version of Plaintiff's motion to enforce or to the relief requested.  Doc. 19 ¶¶ 21-23.[4]  Instead, by email dated October 7, 2020, counsel for Defendants stated, "Mr. Rahn has indicated to me that he will be able to make his payment tomorrow."  Email dated 10/07/20, attached to response at Exh. C (Doc. 19-6).  Defendants admit that no such payment occurred.  Doc. 19 ¶ 25; Doc. 21 ¶ 25.

---

[4]Defendants do not deny the facts of these averments, repeating the boilerplate language, "Denied as stated.  By way of further response, communications between counsel for settlement purposes are confidential."  Doc. 21 ¶¶ 21-23.

On October 9, 2020, Plaintiff filed this motion seeking to enforce settlement and for entry of judgment.  Doc. 19.  On October 23, 2020, Defendants filed a response in which they admit to breaching the payment terms of the Revised Settlement Agreement and do not contest the motion or the relief sought.  Doc. 21.[5]  Plaintiffs filed a reply seeking an order to compel Defendants to respond to discovery in aid of execution on an expedited basis (Doc. 22).

## II.     DISCUSSION

"It is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein."  Fox v. Consol. Rail Corp., 739 F.2d 929, 932 (3d Cir. 1984).  In doing so, courts treat a motion to enforce settlement under the same standard as a motion for summary judgment, inquiring whether there is any disputed issue of material fact as to the validity of the settlement agreement.  Dugan v. O'Hara, 125 F. Supp.3d 527, 535 (E.D. Pa. 2015).

Here, it is undisputed that (1) the Revised Settlement Agreement constitutes an enforceable agreement, (2) Defendants  breached their payment obligations under the Revised Settlement Agreement, and (3) Defendants have not in any way contested the present motion seeking enforcement of the Revised Settlement Agreement or the relief sought.  As a result, the only issues for the court to resolve are Plaintiff's entitlement to

---

[5]Upon receipt of Plaintiff's motion, I directed Defendants' to state within a week's time whether they intended to file an opposition to the motion, Doc. 20, hoping to avoid the need for further briefing and delay if the motion were unopposed.  Defense counsel responded by email that his "client will file a response" to the motion.  The resulting filing of counsel, Doc. 21, was indeed filed as a "response," and not an opposition, as it does not oppose any of the averments or arguments in the motion.

the specific amounts sought, and Plaintiff's request for expedited discovery in aid of execution.

### A. Damages for Defendants' Breach

Plaintiff first seeks $350,000.00 against both Defendants, jointly and severally, pursuant to the express and mutually agreed-upon terms of the Revised Settlement Agreement. Doc. 19 ¶ 26. Defendants admit that they agreed to pay $350,000 in two installments and that they made neither the $150,000 payment due September 9, nor the balance payment due October 9, and therefore the entire settlement amount is now past due. In accordance with the parties' agreement that the court resolve any dispute concerning the Revised Settlement Agreement, and there being no genuine issue of material fact as to Defendants' breach, I find that Plaintiff is entitled to $350,000.00.

Plaintiff also seeks an "award of all reasonable costs and expenses, including attorney's fees, for any efforts or actions undertaken to obtain compliance." Doc. 19 ¶ 27. Paragraph 2 of the Revised Settlement Agreement provides:

> In the event that Defendants breach any of the payment obligations set forth in Paragraph 1, and Plaintiff is required to enlist the assistance of the Court to obtain compliance, Defendants acknowledge that Plaintiff shall petition the Court to award all reasonable costs and expenses, including attorney's fees, for any efforts or actions undertaken to obtain compliance.

Revised Settlement Agreement ¶ 2. Pursuant to this paragraph, Plaintiff seeks $5,000.00, both for having to repeatedly enlist the Court's assistance before filing the present motion, Doc. 19 ¶ 28, and for efforts "going forward should Plaintiff have to conduct discovery in aid of execution, file liens against real property, seize personal property or

assets, garnish wages or otherwise engage in execution practice to enforce this Court's Judgment." Doc. 19 ¶ 29. However, Plaintiff acknowledges in the proposed order attached to its reply that it has not yet accounted for its fees and costs, indicating that the amount "will be determined upon further application to the Court" after any necessary efforts or actions are undertaken. Doc. 22-1 ¶ 2b. Therefore, Plaintiff's request for $5,000,00 in costs and expenses will be denied, without prejudice to Plaintiff filing a motion verifying its fees and costs within thirty days.

Plaintiff also argues that it is entitled to interest at 6% on the first payment of $150,000.00 beginning on September 10, 2020, which according to Plaintiff amounted to $700.00 as of the date of Plaintiff's motion. Doc. 19 ¶ 30.[6] This interest penalty is not explicitly set forth in the Revised Settlement Agreement, but Defendants do not oppose Plaintiff's averment that it is entitled to the interest, stating only that the "averment contains conclusions of law to which no response is required." Doc. 21 ¶ 30. In any event, the parties agreed that the Revised Settlement Agreement "shall be governed by and interpreted under the laws of the Commonwealth of Pennsylvania." Id. ¶ 11.

Under Pennsylvania law, "the award of prejudgment interest in a contract action is not discretionary; it is a legal right to which a prevailing party is entitled." ECEM European Chem. Marketing B.V. v. Purolite Co., 451 Fed. App'x 73, 79 (3d Cir. 2011)

---

[6]Plaintiff states "$700 = $150,000 x .06 x 28 days." Doc. 19 ¶ 90. This equation misstates Plaintiffs actual calculation, as strictly speaking the equation yields a result of $252,000.00. Multiplying $150,000 by .06 yields $9,000, which if divided by 365 days results in a figure of $24.66 per day. Plaintiff has apparently rounded this figure up to $25.00 per day, as $25.00 x 28 days yields Plaintiff's figure of $700.00.

(citing Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988)).  Unless otherwise specified by the parties, the rate of prejudgment interest is calculated as simple interest at a rate of 6% per year.  Russo v. Abington Memorial Hosp. Healthcare Plan, 257 F. Supp.2d 784, 789-90 (E.D. Pa. 2003) (citing Fernandez, 548 A.2d at 1193); see also 41 P.S. § 202 (statutory rate of interest is 6% per annum).  Neither the statute nor caselaw provides that the prejudgment interest multiplier may be rounded to the nearest dollar, as Plaintiff's calculation does here, but rather Pennsylvania courts have held that prejudgment interest may not exceed 6% absent contractual provisions to the contrary.  See Daset Min. Comp v. Industrial Fuel Corp., 473 A.2d 584, 597 (Pa. Super. 1984).  Because the Revised Settlement Agreement does not provide for prejudgment interest in an amount greater than 6% per annum, that statutory rate is applicable.

With these principles in mind, Plaintiff is entitled to prejudgment interest in the amount of $24.66 per day on the first payment of $150,000.00, for thirty days from September 10, 2020, through October 9, 2020 (6% of $150,000.00 ÷ 365 days = $24.66 per day), and $57.53 per day on the full amount of $350,000.00 from October 10, 2020, through entry of judgment (6% of $350,000.00 ÷ 365 days = $57.53 per day).  These calculations yield prejudgment interest amounts of $739.80 for the first thirty days ($24.66 x 30 = $739.80), and $1,208.13 for the following twenty-one days ($57.53 x 21 = $1,208.13), for a total prejudgment interest sum of $1,947.93.

Lastly, Plaintiff argues that it is entitled to post-judgment interest on the principal amount due at $57.50 per day (simple interest at 6% per annum on $350,000.00) until

paid in full. Doc. 19 ¶ 31.[7] Defendants do not oppose Plaintiff's averment that it is entitled to post-judgment interest, again stating only that the "averment contains conclusions of law to which no response is required." Doc. 21 ¶ 31. Federal law states that post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court," 28 U.S.C. § 1961(a), computed daily to the date of payment at the statutory rate, compounded annually. Id. § 1961(b). Accordingly, Plaintiff is entitled to the post-judgment interest at the rate of $57.53 per day, from the date of the Order until full satisfaction of the judgment.

### B.     Plaintiff's Request for Expedited Discovery in Aid of Execution

In its reply, Plaintiff seeks expedited discovery in aid of execution pursuant to Federal Rule of Civil Procedure 26(d)(1). Doc. 22. Plaintiff attaches to its reply a set of interrogatories and requests for production of documents in aid of execution, see Doc. 22 Exh. A (Doc. 22-1), to which Defendants would normally have thirty days to respond, and instead asks that Defendants be ordered to respond within fifteen days and submit to depositions within thirty days, if deemed necessary. Id.

Executions of judgments are governed by Federal Rule 69, which provides in part that discovery in aid of the judgment or execution may be obtained "from any person . . . as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(b). Discovery under the federal rules is governed by Rule 26, which provides the court with very broad discretion regarding discovery. See In re Fine Paper

---

[7]Plaintiff's requested amount is incorrect by three cents per day. As previously explained, 6% of $350,000.00, divided by 365 days, yields a figure of $57.53 per day.

Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."); see also ITOCHU Intern, Inc. v. Devon Robotics, LLC, 303 F.R.D. 229, 232 (E.D. Pa. 2014) (Joyner, J.) (noting court's "very broad" discretion regarding discovery under Rule 26 and stating, "[d]iscovery in aid of execution is similarly broad"). Subsection (d) of Rule 26, governing the timing and sequence of discovery, provides that "[a] party may not seek discovery from any source before the parties have conferred . . . except in a proceeding exempted from initial disclosures . . . or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).

Rule 69 is silent as to expedited discovery, and Rule 26(d) does not set a standard for determining when expedited discovery should be permitted. However, "[w]hen faced with requests to expedite discovery under Rule 26(d), courts in the Third Circuit generally follow a 'good cause' or 'reasonableness' standard." Barbieri v. Wells Fargo & Co., No, 09-3196, 2012 WL 3089373, at *3 (E.D. Pa. Jul. 27, 2012) (Surrick, J.) (citations omitted). Under the reasonableness standard, "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." Id. (quoting Entertainment Tech. Corp. v. Walt Disney Imagineering, No. 03-3546, 2003 WL 22519440, at *14 (E.D. Pa. Oct. 3, 2003 (Hutton, J.)). "Good cause is usually found where the party's need for the expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant." Barbieri, 2012 WL 3089373 at *3 (citation omitted). Other factors include the timing of the request for

expedited discovery, whether the requests are overly broad, and whether the requesting party will suffer irreparable harm if the discovery is not expedited.  Id.; Entertainment Tech. Corp., 2003 WL 22519440, at *14; see also ITOCHU Intern, 303 F.R.D. at 232 ("As with general civil discovery, [discovery in aid of judgment or execution] is not unlimited, and 'must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons.'") (citation omitted).  The party seeking expedited discovery has the burden of showing that the request is reasonable under the circumstances.  Id.

In support of its request for expedited discovery, Plaintiff notes Defendants' pattern of making repeated promises that they would comply with the parties' agreed-to payment terms, only to ignore the deadlines and delay resolution of this matter, ultimately forcing Plaintiff to file the present motion.  Defendants then reported that they would respond to the motion, but the response Defendants filed was devoid of substance and raised no grounds in opposition.  Understandably, Plaintiff is concerned that Defendants are engaged in an intentional effort to delay entry of judgment and may be in the process of attempting to conceal potential assets.  By seeking expedited discovery, Plaintiff seeks to recapture the time lost by Defendants' dilatory tactics.

Plaintiff's request for expedited discovery in aid of execution is reasonable. Defendants repeatedly breached their payment obligations under the Revised Settlement Agreement, despite repeated assurances to Plaintiff and to this Court regarding their intention to comply.  Defendants compounded the inadvisability of this pattern of conduct by filing a cursory response to the present motion, admitting each breach of the

payment terms of the Revised Settlement Agreement and neither contesting the motion, nor the relief sought. Indeed, the only effect of this cursory response was to delay by two weeks the court's entry of judgment and therefore the start of Plaintiff's discovery in aid of execution. Defendants' actions strongly suggest that they are engaged in an ongoing pattern of delay. Moreover, under the circumstances, it is hard to conceive how expediting this discovery would cause prejudice or hardship for Defendants, or amount to harassment.

For the aforementioned reasons, I will grant Plaintiff's request for expedited discovery in aid of execution.

### III. **CONCLUSION**

There is no disputed issue of material fact as to the validity of the Revised Settlement Agreement, Defendants' breach of its payment terms, or Plaintiff's entitlement to the amounts sought, except for reasonable costs and fees which are not yet known. Therefore, the motion to enforce settlement and for entry of judgment will be granted in part and denied in part, without prejudice to Plaintiff seeking reasonable costs and fees within thirty days, and with judgment to be entered by Judge Pappert by separate Order. Moreover, I find that discovery in aid of execution should be conducted on an expedited basis.

An appropriate Order follows.