IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAS ARCHITECTS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHRIS RAHN and CHRISTINE PASIEKA | : | NO.  20-1276 |

## **MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                April 15, 2021

  In this action, Plaintiff, DAS Architects, Inc. ("Plaintiff"), sought damages against Chris Rahn and Christine Pasieka (collectively "Defendants") for breach of contract and other claims related to the alleged non-payment of architectural fees.  See Complaint (Doc. 1).  The parties entered into a settlement agreement ("Settlement Agreement") and then a revised settlement agreement ("Revised Settlement Agreement"), followed by additional court intervention as Plaintiff took steps to obtain full satisfaction of Defendants' obligations under the Revised Settlement Agreement.  Presently before the court is Plaintiff's motion for attorney fees and costs (Doc. 36), Defendants' response (Doc. 44), the response of intervenor Jon Taylor, Esquire ("Attorney Taylor") (Doc. 43-1),[1] and Plaintiff's reply (Doc. 46).  For the reasons that follow, the motion will be granted in part and denied in part.

---

[1]Attorney Taylor attached his response to a petition for leave to intervene in this matter, see Doc. 43, which I have granted by separate Order.  See Doc. 47.

I.    **FACTS AND PROCEDURAL BACKGROUND**[2]

In 2019, Plaintiff, a professional architectural and interior design firm based in Philadelphia, and Defendant Rahn, a real estate developer then based in New York, entered into separate written agreements ("Agreements") for three development projects in Philadelphia. See Affidavit of David Schultz, co-founder and principal of DAS, attached to motion at Exh. A (Doc. 36-2) ("Schultz Aff."), ¶¶ 8-10; Doc. 1 ¶ 8 and Exhs. A, E & F; Doc. 7 (Answer) ¶ 8.

As work on the projects proceeded, Defendants sent Plaintiff a check dated October 17, 2019, in the amount of $112,720.60, signed by and from the account of Defendant Pasieka. See 10/17/19 Check, attached to Doc. 1 at Exh. C. When Plaintiff attempted to cash the check, it was informed by the bank that there were insufficient funds. Schultz Aff. ¶ 21.[3] It is not disputed that Plaintiff continued to perform on the projects, and that Defendants failed to provide payment.

Two of the Agreements required mediation as a condition precedent to filing a lawsuit, e.g., Doc. 1 Exh. A ¶ 4.2 (Doc. 1 at 21), and a mediation was scheduled after

---

[2]All pinpoint citations to court filings are to the court's ECF pagination. In its motion, Plaintiff seeks fees and costs from the inception of the lawsuit, and not merely for its efforts to obtain full satisfaction of Defendants' obligations under the Revised Settlement Agreement. Therefore, I will include a brief factual summary and procedural background for events that occurred prior to the parties' settlement negotiations. Defendants do not contest Plaintiff's summary of the pre-suit facts. See Doc. 44 at 6-7.

[3]Plaintiff alleged in the Complaint that Defendants issued the check but that it bounced, Doc. 1 ¶ 13, and in the Answer Defendants denied the allegation except for admitting making the payment. Doc. 7 ¶ 13. Defendants have not thereafter asserted that they made any payment under the Agreements.

Defendants denied Plaintiff's request to forego mediation and proceed directly to litigation. Schultz Aff. ¶¶ 35-37.  Mediation was scheduled for March 11, 2020, but on February 27, 2020, the arbitrator informed Plaintiff that the mediation was terminated because Defendants failed to pay their share of the mediation costs.  Id. ¶ 40.

On March 4, 2020, Plaintiff commenced this action against seeking interest, costs, penalties, and attorney fees under the Agreements, as well as punitive damages.  Doc. 1.  When Defendants' prior counsel failed to respond to Plaintiff's request that he accept service on behalf of Defendants, see Affidavit of Steven G. Bardsley, Esq., attached to motion at Exh. B (Doc. 36-3) ("Bardsley Aff."), at ¶ 19, Plaintiff paid for a process server to serve Defendants personally.  Docs. 4 & 5.  Defendants retained Attorney Taylor, who filed an Answer on April 27, 2020, generally denying Plaintiff's claims, Doc. 7, but did not pursue discovery.  Bardsley Aff. ¶ 22.[4]

On May 5, 2020, the Honorable Gerald J. Pappert, to whom the case was originally assigned, referred the matter to me for purposes of settlement discussions.  Doc. 11.  On July 23, 2020, I conduced a video settlement conference during which the parties agreed to settle the case pursuant to terms which were subsequently memorialized in a fully executed agreement dated August 5, 2020.  See Settlement Agreement, Doc.

---

[4]Attorney Taylor asserts that he was retained in April 2020, Doc. 45-2 at 4, and Plaintiff does not dispute that Defendants had separate counsel prior to responding to the Complaint.  Doc. 36-1 at 11-12.  Attorney Taylor agrees that he did not conduct discovery, and argues that avoiding discovery when settlement was imminent was reasonable strategy.  Doc. 45-2 at 5.

19-4.  Plaintiffs agreed to pay a total of $300,000 in three equal monthly installments, with the first $100,000 payment due by September 1, 2020.  Id. ¶ 1.

On September 3, 2020, after Defendants failed to make the first payment, the parties agreed to revise their settlement terms, including an agreement by Defendants to increase the total amount to be paid to $350,000.00.  See Revised Settlement Agreement, Doc. 19-5.  In the Revised Settlement Agreement, Defendants agreed to make a first payment of $150,000.00 by September 9, 2020, followed by a second payment of the remaining balance by October 9, 2020.  For each payment that Defendants paid on time, the agreement called for a reduction of $25,000 in the total amount due, such that Defendants could satisfy their obligation by paying the original $300,000 with timely payments.  Id. ¶ 1.  As a result of the Revised Settlement Agreement, the parties submitted a Stipulation of Dismissal with Prejudice to Judge Pappert, who dismissed the case "with prejudice with each party to bear its own costs and fees" by Order dated September 11, 2020.  Doc. 17.

Defendants admitted that they did not comply with the terms of the Revised Settlement Agreement and did not make the first payment.  Doc. 19 ¶ 13; Doc. 21 ¶ 13.  At Plaintiff's request I held a telephone conference with counsel on September 11, 2020.  Doc. 14.  Defendants again failed to make any payments.  Doc. 19 ¶ 17; Doc. 21 ¶ 17.  On September 18, 2020, I conducted a second telephone conference with counsel for both parties and Mr. Rahn.  Doc. 18.  Ms. Pasieka did not appear despite being directed through counsel to do so.  Doc. 16.

Defendants again failed to comply with payment terms, and Attorney Taylor failed to respond to emails inquiring into the timing of payment.  Instead, by email dated October 7, 2020, Attorney Taylor stated that "Mr. Rahn has indicated to me that he will be able to make his payment tomorrow."  Bardsley Aff. ¶ 39; Email dated 10/07/20, attached to Doc. 19 at Exh. C (Doc. 19-6).  No such payment occurred.  Bardsley Aff. ¶ 39; Doc. 19 ¶ 25; Doc. 21 ¶ 25.

On October 9, 2020, Plaintiff filed a motion to enforce settlement and for entry of judgment, in addition to $5,000.00 for fees and costs.  Doc. 19.  On October 23, 2020, Defendants filed a response in which they admitted to breaching the payment terms of the Revised Settlement Agreement and did not contest the motion or the relief sought.  Doc. 21.  Plaintiffs then filed a reply seeking an order to compel Defendants to respond to discovery in aid of execution on an expedited basis.  Doc. 22.

By Memorandum and Order dated October 30, 2020, I granted Plaintiff's motion to enforce the Revised Settlement Agreement and its request for expedited discovery, finding that "Defendants' actions strongly suggest that they are engaged in an ongoing pattern of delay," Doc. 23 at 11, and ordered Defendants to respond to Plaintiff's interrogatories and request for production of documents within fifteen days of the entry of Judgment, and to submit to depositions within thirty days of the entry of Judgment.  Doc. 24.  I denied without prejudice Plaintiff's request for fees and costs, including attorney fees, stating that "Plaintiff's attorneys shall file a motion for fees and costs within thirty days of the date of this Order."  Id.

5

Judge Pappert ordered Entry of Judgment on November 2, 2020, <u>see</u> Doc. 25, thus giving Defendants until November 16, 2020, to produce discovery responses in aid of execution, and until December 2, 2020, to submit to depositions.  On November 16, 2020, Defendants responded to Plaintiff's discovery requests in aid of execution, failing to provide the requested information or any documents.  <u>See</u> Responses, attached to Plaintiff's Motion for Contempt at Exh. B (Doc. 26-3).[5]  Defendants also failed to complete their depositions despite being scheduled more than once.  Bardsley Aff. ¶¶ 74-75; Doc. 29 at 2-5 (Dec. 3, 2020, letter from Plaintiff's counsel to the court).

On November 18, 2020, Plaintiff filed a motion for an order to show cause why Defendants should not be held in civil contempt of court.  Doc. 26.  On November 25, 2020, Defendants submitted a payment in the amount of $140,000.00, as partial satisfaction of the Judgment.  Doc. 44 at 7.  On the same day, during a teleconference I held with counsel, Attorney Taylor acknowledged that Defendants' response to the motion was due on December 2, 2020.  After no response was filed, Plaintiff filed a supplement to its motion.  Doc. 29.[6]

---

[5]Plaintiffs note that although the requests were submitted to each Defendant individually, Defendants provided a joint response which Plaintiff characterizes as "grossly insufficient, deliberately ambiguous and clearly calculated to obstruct [Plaintiff's] ability to attain the information necessary to execute on the Judgment."  Doc. 36-1 at 17.  The only substantive response to 19 interrogatories and 25 document requests was that "Defendants have an interest in properties in Philadelphia known as [addresses identified].  Defendants have transferred property since January 2018.  Defendants have tenants."  <u>E.g.</u>, Doc. 26-3 at 4.

[6]Meanwhile, by Order dated November 30, 2020, Judge Pappert transferred the case to me by consent of the parties.  Doc. 27.  On the same day, I granted Plaintiff's

By Order dated December 9, 2020, I granted Plaintiff's motion for an order to show cause why Defendants should not be held in civil contempt, and scheduled a telephonic hearing for December 16, 2020, at which counsel and Defendants were required to participate.  Doc. 30.  Following the hearing, I issued an Order finding that Defendants' responses to Plaintiff's interrogatories and document requests in aid of execution were inadequate and their objections thereto were overruled and deemed waived, and I set forth new deadlines by which Defendants were to provide full and complete responses and submit to depositions.  Doc. 32.  I also scheduled a supplemental hearing as to why Defendants should not be held in civil contempt of court.  Id.

On December 22, 2020 -- the day before the deadline I set for Defendants to provide full and complete responses -- Defendants submitted a second payment in the amount of $215,000.00, which sum was sufficient to satisfy the Judgment amount of $350,000.00, plus $5,000.00 in interest.  Bardsley Aff. ¶ 83; see also Doc. 35 (Satisfaction of Judgment).  In light of the second payment, on December 24, 2020, Defendants filed a motion for stay, seeking a stay of discovery in aid of execution and relief from the obligations set forth in my December 9 and 16 Orders.  Doc. 33.

By Order dated December 30, 2020, I granted in part and denied in part Defendants' motion for a stay.  Doc. 34.  I stayed discovery in aid of execution and further contempt proceedings, but required Defendants to place in escrow the sum of

---

unopposed request for extension of time to file a petition for fees and costs, to February 1, 2020.  Doc. 28.

$150,000.00, to cover payment of a subsequent order for fees and costs.[7]  The Order also reiterated that Plaintiff's attorneys had until February 1, 2021, in which to file a motion for fees and costs.  Id.

On February 1, 2021, Plaintiff timely filed the present motion for fees and costs, seeking $234,705.00 in fees and costs from both Defendants and Attorney Taylor.  Doc. 36 at 1; Doc. 36-1 at 42-43.[8]  New counsel entered an appearance on behalf of Defendants and responded to the motion, Docs. 38 & 44, and after withdrawing Attorney Taylor also filed a response.  Docs. 41 & 45.  Plaintiff filed a reply.  Doc. 46.

## II.    LEGAL STANDARDS

Plaintiff presents two different sources for the court's authority to issue fees based on whether the fees were incurred before or after the motion to enforce the Revised Settlement Agreement.  I will address Plaintiff's entitlement to fees in the sections below devoted to each time period.

Where a petitioner is entitled to recover attorney fees and costs, the court must determine the reasonableness of both the attorneys' hourly rates and the work performed. To determine a reasonable hourly rate, courts apply a burden-shifting analysis.  See Evans v. Port Auth. of N.Y., 273 F.3d 346, 361 (3d Cir. 2001).  First, a plaintiff bears the

---

[7]By letter to the court dated January 6, 2021, Attorney Taylor verified that $150,000.00 had been placed in an account to be held in escrow for purposes of the present motion for fees and costs.

[8]The $234,705.00 sum consists of $153,765.00 for fees incurred during the period between Plaintiff's breach of the Revised Settlement Agreement (September 9, 2020) through the Satisfaction of Judgment (January 2021), and an additional $80,940.00 in fees and costs from the inception of the litigation.  Doc. 36-1 at 30, 41.

burden of establishing what constitutes a reasonable market rate "for the essential

character and complexity of the legal services rendered." Smith v. Phila. Hous. Auth.,

107 F.3d 223, 225 (3d Cir. 1997).  A reasonable market rate is "calculated according to

the prevailing market rates in the relevant community."  Rode v. Dellarciprete, 892 F.2d

1177, 1183 (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).   The court "should

assess the experience and skill of the prevailing party's attorneys and compare

their rates to the rates prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256

F.3d 181, 184 (3d Cir. 2001) (citations omitted).  Plaintiff can meet this standard through

"satisfactory evidence, in addition to the attorney's own affidavits." Blum, 465 U.S. at

896 n.11.  The court may also consider the complexity of the case, the quality of the

attorney work product, and its perception of the attorney's skill and experience.  See, e.g.,

Mantz v. Steven Singer Jewelers, 100 F. App'x 78, 81-82 (3d Cir. 2004) (requested

hourly rate properly reduced based on "relative simplicity of [the] case, its barely

successful outcome . . . and [counsel's] skill as observed by this Court at trial and in the

pleadings he has submitted"); Bell v. United Princeton Props., Inc., 884 F.2d 713, 719

(3d Cir. 1989) (court may "reduce requested fees with respect to matters within the

judge's personal knowledge").

Once a plaintiff  has established its prima facie case, the defendant may contest the

reasonableness of the rate with "appropriate record evidence," Evans, 273 F.3d at 361,

and the court cannot "decrease a fee award based on factors not raised at all by the

adverse party." Bell, 884 F.2d at 720.  Once the defendant raises objections to the fee

request, the district court has wide discretion to adjust the fee award in light of those objections.  Rode, 892 F.2d at 1183.

To determine the reasonableness of the fees sought, "[t]he most useful starting point . . .  is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (U.S. 1983); Student Pub. Research Group v. AT&T Bell Lab., 842 F.2d 1436, 1448 (3d Cir. 1990).  This calculation results in the "lodestar," which can be adjusted as appropriate.  Rode, 892 F.2d at 1183 (citing Hensley, 461 U.S. at 433); Clemens v. New York Cent. Mut. Fire Ins. Co., 903 F.3d 396, 400 (3d Cir. 2018).  Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary, and the court also can deduct hours when the fee petition inadequately documents the hours claimed.  Hensley, 461 U.S. at 433; Clemens, 903 F.3d at 400.

## III.   DISCUSSION

### A.   Fees and Costs from Attorney Taylor

I begin by addressing whether Plaintiff is entitled to relief on its motion as against Attorney Taylor.  Plaintiff alleges that Attorney Taylor's actions unreasonably and vexatiously multiplied the proceedings, entitling it to recover costs and attorney fees.  Doc. 36 at 29-42 (citing 28 U.S.C. § 1927) ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").  Attorney Taylor opposes the motion, arguing that his

conduct does not warrant an award of sanctions in the form of attorney fees.  Doc. 45-2 at 3-10.

As an initial matter, Defendants retained Attorney Taylor after the Complaint was filed in March 2020, and therefore actions which occurred prior to the Complaint are not relevant as to Attorney Taylor.  Moreover, for the reasons to be discussed, Plaintiff is not entitled to an award of fees prior to Defendants' breach of the Revised Settlement Agreement in September 2020.

As for the period from Defendants' breach of the Revised Settlement Agreement in September 2020 through the Satisfaction of Judgment filed in January 2021, attorney fees levied as sanctions are not warranted.  While Attorney Taylor made representations to Plaintiffs and the court regarding dates for payment and responses to motions that were either not met or substantively deficient, it is difficult if not impossible to determine whether such actions are attributable to counsel or his clients.  What is clear, however, is that Attorney Taylor's efforts resulted in Defendants making a first payment of $140,000.00 on November 20, 2020, and a second payment of $215,000.00 on December 22, 2020, which together satisfied the Judgment amount of $350,000.00, plus $5,000.00 in interest.  Bardsley Aff. ¶ 83; Doc. 35.  Defendants fully satisfied the Judgment before rescheduled depositions were undertaken as required by court order, and before the court proceeded with formal civil contempt proceedings.  Under the circumstances, I will not impose sanctions on Attorney Taylor in the form of attorney fees.

11

### B.      The Rates Billed by Plaintiff's Attorneys are Reasonable

Next I address whether the rates sought by Plaintiff's counsel are reasonable,

which is "calculated according to the prevailing market rates in the relevant community."

Rode, 892 F.2d at 1183.  For Philadelphia, "[t]he fee schedule established by Community

Legal Services, Inc. ("CLS") has been approvingly cited by the Third Circuit as being

well developed and has been found . . . to be a fair reflection of the prevailing market

rates. . . ."  Maldonado, 256 F.3d at 187; United States ex rel. Palmer v. C&D Techs.,

Inc., 897 F.3d 128, 132 (3d Cir. 2018).  The CLS Fee Schedule provides for following

ranges of rates, in relevant part:

| | |
|---|---|
| Attorneys more than 25 years' experience | $650 - $700 |
| Attorneys 11-15 years' experience | $375 - $450 |
| Paralegal I and II | $160 - $200 |

CLS Fee Schedule, attached to Bardsley Aff. at Exh. D (Doc. 36-3 at 66).

Here, Plaintiff requests the following hourly rates for Mr. Bardsley, a partner,

Sean Ryan, Esq., an associate, and Donna Pierson, a paralegal:

| | | |
|---|---|---|
| Mr. Bardsley | 25+ years' experience | $600 |
| Mr. Ryan | 12 years' experience | $375 |
| Ms. Pierson | 20+ years | $125 |

Doc. 36-1 at 23; see Engagement Letter between Plaintiff and counsel, attached to

Bardsley Aff. at Exh. B ("Engagement Letter") (Doc. 36-3 at 60).  In addition to the

Engagement Letter and the CLS Fee Schedule, Plaintiff provides the Bardsley Affidavit,

and an affidavit from experienced construction litigator B. Christopher Lee addressing

the skill and experience of Plaintiff's counsel and confirming that the fees sought are

reasonable and customary.  See Affidavit of C. Christopher Lee, Esq., attached to motion at Exh. C (Doc. 36-4).

Defendants do not contest the reasonableness of these rates in a broad sense, as for example by devoting a section of their briefs to contesting the reasonableness of the rates billed by Plaintiff's attorneys, see Docs. 45-1 & 46, and they do not provide affidavits, expert opinion, or case law to support a finding that the rates are unreasonable or to suggest alternative proposed rates.  To the contrary, Defendants concede that the hourly rates are "reasonable for attorneys with similar experience," see Doc. 44 at 17-18, and instead argue that the work performed was "simple" and that the attorneys' phone calls, reading, drafting emails, and reviewing documents does not justify the rates billed.  Id. at 12, 13, 14, 15, 17.

Defendants provide no support for the suggestion that the work performed in this litigation was "simple," particularly in light of the efforts expended in obtaining satisfaction of the Judgment, or that attorney time spent in phone calls, reading, drafting, and reviewing relevant materials is not subject to the billing rates set forth in the Engagement Letter.  Moreover, the rates billed are at the lower end or below the rates reflected in the CLS Fee Schedule deemed to be a fair reflection of the prevailing market rates for comparable legal services in Philadelphia.  Accordingly, I find that the rates billed by Plaintiff's counsel are reasonable.

### C.      Fees and Costs from the Inception of Litigation

Plaintiff seeks $80,940.00 associated with the underlying litigation, representing 176.2 hours of attorney and paralegal time and costs.  Doc. 36-1 at 31-35, 41.  The

Complaint asserted state-law causes of action based on Defendants' actions in connection with the Agreements and failure to pay for Plaintiff's services.  Doc. 1 Counts I-IV. Plaintiff concedes that Pennsylvania law follows the "American Rule" as to attorney fees. Doc. 36-1 at 31.

Under the "American Rule," the "prevailing party is ordinarily not entitled to collect a reasonable attorney's fee from the loser." Aleyska Pipeline Service Co. v. Wilderness Soc., 421 U.S. 240, 247 (1975).  Exceptions to the American Rule apply under certain statutes, see, e.g., 42 U.S.C. § 1988(b) (in action to enforce certain civil rights, court may allow prevailing party "a reasonable attorney's fee as part of the costs"), or if the parties have elected contractually to allow for the recovery of attorney fees.  See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53 (2010) (American Rule applies and litigants pay their own fees "unless a statute or contract provides otherwise"). Additionally, courts have the inherent power to address conduct that amounts to abuse of the judicial system.  See Thompson v. Johnson, 410 F. Supp. 633, 643 (E.D. Pa. 1976) (exception to American Rule where party seeking fees had to institute litigation due to adversary's misconduct); 28 U.S.C. § 1927 (damages can be awarded against counsel for unreasonable and vexatious multiplication of proceedings).

Plaintiff invokes the inherent power of the court to sanction misconduct, seeking an award of fees and costs from the inception of this dispute due to what it characterizes as Defendants' "dilatory and bad faith conduct." Doc. 36-1 at 31-35.  Plaintiff points to the factual and procedural history of the case to demonstrate that Defendants' conduct required Plaintiff to commence the litigation and unnecessarily prolonged the parties'

14

dispute, that Defendants breached both the Settlement Agreement and the later Revised Settlement Agreement, that the Court recognized Defendants' actions "strongly suggest that they are engaged in an ongoing pattern of delay," Doc. 23 at 11, and that Plaintiff had to expend additional time and effort, and seek additional Court intervention, to obtain satisfaction of the Judgment.  Defendants oppose an award of fees for the underlying litigation, relying on the American Rule and Judge Pappert's dismissal order, and also argue that Plaintiff has not established bad faith.  Doc. 44 at 9-11.

The Court questions whether Defendants exercised bad faith in their actions prior to and during the litigation, because their conduct throughout suggests that they never sought to undermine the validity of Plaintiff's claims but rather only to postpone fulfilling their obligations.  Nevertheless, the sanctions sought by Plaintiff are not warranted.  Defendants were entitled to retain counsel to evaluate any potential defenses to the underlying claims, and relatively promptly after the litigation was initiated in March 2020, reached a settlement agreement in August 2020.  The dilatory conduct of greatest concern to the court took place after the settlement was reached.

Also, on September 11, 2020, Judge Pappert dismissed this action "with prejudice with each party to bear its own costs and fees."  Doc. 17.  Plaintiff argues that this language should be disregarded because it constitutes "an unsubstantiated and inappropriate attempt to limit this Court's inherent power" to award fees to sanction a party's refusal to cooperate in discovery and withhold certain information.  Doc. 46 at 8 (citing Goodyear Tire & Rubber Co. v. Haeger, __ U.S. __, 137 S. Ct. 1178 (2017)).  However, the September 11, 2020 Order has not been vacated, and Plaintiff presents no

additional facts to warrant the Order being vacated.  To the contrary, the factual and

procedural history that Plaintiff relies on were known to Plaintiff before it entered into

the Settlement Agreement and Revised Settlement Agreement with Defendants, and they

were known to the court prior to issuance of the dismissal Order.

It has been the clear understanding of the parties and the court that this fee petition

would be limited to efforts undertaken by Plaintiff in the event that Defendants breached

the Revised Settlement Agreement.  Paragraph 2 of the Revised Settlement Agreement

provides:

> In the event that Defendants breach any of the payment
> obligations set forth in Paragraph 1, and Plaintiff is required
> to enlist the assistance of the Court to obtain compliance,
> Defendants acknowledge that Plaintiff shall petition the Court
> to award all reasonable costs and expenses, including
> attorney's fees, for any efforts or actions undertaken to obtain
> compliance.

Revised Settlement Agreement ¶ 2.  The Revised Settlement Agreement is silent as to

fees for anything which had previously occurred, and the language of Judge Pappert's

dismissal Order is consistent with the understanding that Plaintiff would not be entitled to

such fees.  Doc. 17.  Indeed, Plaintiff has appeared to acknowledged as much, stating in a

proposed order attached to its reply in support of a subsequent motion to enforce

settlement and for entry of judgment that the amount of fees and costs "will be

determined upon further application to the Court" after any necessary efforts or actions

were undertaken.  Doc. 22-1 ¶ 2b.  The court also envisioned the recovery of fees and

costs linked to such efforts, authorizing the filing of a motion for fees and costs in the

order granting the motion to enforce settlement and for entry of judgment, see Doc. 24,

and then extending the deadline for that motion to February 1, 2021.  Doc. 28.  Plaintiff

thereafter attempted to obtain expedited discovery and to conduct depositions in aid of

execution, and when these efforts were frustrated by Defendants, Plaintiff filed a motion

for an order to show cause why Defendants should not be held in civil contempt of court,

followed by a hearing.  Docs. 26 & 31.  This fee petition is thus properly limited to these

efforts by Plaintiff to obtain satisfaction of the Judgment.

Finally, after Defendants belatedly satisfied the Judgment, I required them to place

in escrow the amount of $150,000.00, and to provide the Court with verification of the

account, <u>see</u> Doc. 34, in the expectation that the fees for the period following Defendant's

breach of the Revised Settlement Agreement would be substantial, as indeed they are.

Under the circumstances, additional sanctions are unwarranted.

### D.      Fees for Period After September 9, 2020

Plaintiff seeks recovery of all fees for the period from September 9, 2020, when

Defendants breached the Revised Settlement Agreement, through the Satisfaction of

Judgment and the present motion seeking fees and costs filed in January 2021.  The sum

sought for this period is $153,765.00, broken down as follows:

| | | | |
|---|---|---|---|
| Mr. Bardsley | $600 | 182.4 | $109,440.00 |
| Mr. Ryan | $375 | 110.0 | $ 41,250.00 |
| Ms. Pierson | $125 | 24.6 | $  3,075.00 |
| | | | |
| Totals | | 317.0 | $153,765.00 fees |
| | | | $      0.00 costs |
| | | | $153,765.00 |

Doc. 26-1 at 30.  In support of its request, Plaintiff has provided itemized monthly billing statements for the relevant period.  See Itemized Monthly Billing Statements, attached to Bardsley Aff. at Exh. E ("Billing Statements") (Doc. 36-3 at 103-25).

Initially, Defendants do not contest that they undertook a contractual obligation to pay fees and costs.  See Revised Settlement Agreement ¶ 2 ("In the event that Defendants breach any of the payment obligations . . . and Plaintiff is required to enlist the assistance of the Court to obtain compliance, Defendants acknowledge that Plaintiff shall petition the Court to award all reasonable costs and expenses, including attorney's fees, for any efforts or actions undertaken to obtain compliance.").  Therefore, for the reasons discussed, the American Rule does not apply.

Defendants first argue that Plaintiff is not entitled to these fees because the Revised Settlement Agreement increased the original Settlement Agreement amount from $300,000.00 to $350,000.00, which sufficiently accounted for additional fees incurred for the relevant period, see Doc. 44 at 14-15.  This argument is without merit.  As Defendants acknowledge, Doc. 44 at 18, the $50,000.00 increase from the Settlement Agreement to the Revised Settlement Agreement was intended to incentivize timely payment of the amount owed, which is why the amount owed would be reduced if Defendants made timely payments.  Revised Settlement Agreement ¶ 1.  Thus, the extra sum did not tie directly to Plaintiff's fees and costs, but rather it was a consequence of Defendants' conduct prior to and after the parties entered into the original Settlement Agreement.  Additionally, the very fact that the Revised Settlement Agreement explicitly provided that Plaintiff can petition the court to recover fees and costs cuts directly against

18

Defendants' argument that the $50,000 represented such fees and costs.  Therefore, Plaintiff is entitled to fees and costs incurred to obtain compliance with the Revised Settlement Agreement, separate from the $55,000.00 sum paid above the original Settlement Agreement amount of $300,000.00.

Defendants next oppose the requested fees on the ground that they are unreasonable, excessive and outrageous.  Doc. 44 at 15-25.  Plaintiff argues that Defendants' challenges to the Billing Statements are insufficiently specific, for example by grouping undefined time entries together to challenge blocks of time for each filing or dispute.  Doc. 46 at 5-6.  I disagree, and find that Defendants adequately challenge the Billing Statements, often by identifying specific issues as to specific items billed by specific attorneys for each month at issue, sufficient to allow the court to make a meaningful determination as to the reasonableness of the fees sought.

Below I will review the bills month by month, identifying those fees itemized on the Billing Statements that should be reduced or eliminated.  All dates are in 2020, except for January 2021.

    1.   <u>September 10 through October</u>[9]

As previously noted, Defendants breached the Revised Settlement Agreement by failing to make a first payment by September 9 or thereafter.  Defendants' breach led to Plaintiff's motion to enforce settlement and for entry of judgment, filed on October 9,

---

[9]The Billing Statements separate the September and October billings, <u>see</u> Doc 36-3 at 104-05, 107-09, but I have combined them for ease of analysis.

which included a request for $5,000.00 in attorney fees.  Doc. 19 ¶ 28.  However, in the

present motion, Plaintiff seeks $13,422.50 for work billed during the same period, that is,

from Defendants' breach on September 9, to the filing of the motion to enforce settlement

on October 9 -- a discrepancy of $8,422.50 which Plaintiff does not explain.  Doc. 44 at

20.  It is likely that Plaintiff was willing to provide a very conservative estimate of its

fees with the expectation that the matter would be resolved with a decision on the motion

to enforce, but then decided to submit its actual fees once much more work was required

to compel Defendants to actually pay what they owed and were directed to pay.

Nevertheless, the discrepancy is significant and cannot be reconciled fully by this

explanation, particularly because $13,422.50 is a high sum for a motion to enforce

settlement filed by experienced attorneys who have handled similar cases in the past.

Accordingly, I will allow Plaintiff's some additional recovery above the $5,000.00 they

originally requested, and will reduce the fees for this period by $5,922.50.[10]

On October 21, Ryan billed 0.4 hours (two entries of 0.2 hours) to evaluate and

respond to correspondence from the process server.  Doc. 36-3 at 107.  Many judges of

this court have concluded that clerical tasks should not be billed at an hourly rate.

> As a general rule, time that would not be billed to a client
> cannot be imposed on an adversary.  Public Interest Research
> Group of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1188 (3d
> Cir. 1995).  Thus, administrative tasks, which are not the type
> normally billed to a paying client, may not be recovered by a

---

[10]The amount reduced includes $1,050.00 which Plaintiff concedes should be reduced for Ryan's preparation for and attendance at two follow-up conferences with the court, which was duplicative of work billed by Bardsley.  Doc. 46 at 6-7 (1.8 hours for Ryan's work performed on September 11 and 1.0 hour for his work performed on September 18 (2.8 hours x $375.00 = $1,050.00)).

> party through a fee petition.  See Spegon v. Catholic Bishop
> of Chi., 175 F.3d 544, 552 (7th Cir. 1999) (finding the district
> court did not abuse its discretion by disallowing attorney's
> time spent on administrative tasks and striking nearly all of
> the paralegal's hours).

Alexander v. NCO Fin. Sys., Inc., Civ. No. 11-401, 2011 WL 2415156, at *6 (E.D. Pa.

June 16, 2011) (Slomsky, J.); see also Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989)

("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of

who performs them"); White v. Barnhart, Civ. No. 05-2856, 2006 WL 2433835, at *6

(E.D. Pa. Aug. 18, 2006) (Baylson, J.) (fees for docket-related tasks and services that

could be performed by a staff member are not recoverable); Sheffer v. Experian Info.

Solutions, Inc., 290 F. Supp.2d 538, 549 (E.D. Pa. 2003) (clerical tasks are office

overhead and therefore incorporated into attorney's rate).

I agree that attorney time related to process serving should not be reimbursed, and

will disallow the entries, resulting in a reduction of $150.00 (0.4 hours x $375.00).

On October 23, both Bardsley (1.3 hours) and Ryan (2.9 hours) billed to evaluate

Defendants' response in opposition to Plaintiff's motion enforce settlement.  Doc. 36-3 at

108.  The hours billed by Bardsley will be disallowed, resulting in a reduction of $780.00

(1.3 hours x $600.00).

Similarly, on October 26 and 27, Bardsley billed 7.8 hours ($4,680.00) and Ryan

billed 8 hours ($3,000.00) for a four-page reply in support of Plaintiff's motion to enforce

settlement, resulting in combined fees of $7,680.  Doc. 36-3 at 108.  I will reduce the

amount by half, disallowing $3,840.00.

In total, fees for the period from September 10, 2020, through October 31 will be reduced by $10,692.50.

    2.   <u>November</u>

From November 11 through November 18, Plaintiff's attorneys billed a combined 45.8 hours to research, draft, and file the contempt motion.  Doc. 36-3 at 112-14.  Specifically, on November 11, Ryan billed 4.4 hours to, among other things, "research as to remedies for violation of federal rules regarding interrogatory answers; perform research as to remedies for violation of court order; perform research as to penalties for lying under oath in judgment interrogatory responses" -- that is, research that led to Plaintiff's contempt proceedings.  <u>Id.</u> at 112.  Bardsley then billed 7.2 hours on November 12, 2.5 hours on November 15, and 8.4 hours on November 16 to research contempt, for a total of 18.1 hours.  <u>Id.</u> at 112-13.  On November 17, Bardsley billed a further 6.5 hours for work that included further developing the motion for contempt, and Ryan billed 7 hours to prepare the brief on the motion for contempt.  <u>Id.</u> at 113.  On November 18, Bardsley billed an additional 8.7 hours for finalizing and filing the motion for contempt, and Ryan billed an additional 1.1 hours.  Doc. 36-3 at 114.  The combined 45.8 hours spent in preparing and drafting this motion – 33.3 hours by Bardsley totaling $19,980.00 (33.3 hours x $600.00) and 12.5 hours by Ryan totaling $4,687.50 (12.5 hours x $375), for a total amount billed of $24,667.50 -- is excessive in light of counsels' experience in similar cases, and because the facts and procedural history of this case had by that time become a well-worn path.  I will reduce this figure by 25%, or $6,166.88.

From November 20 through 24, Plaintiff's attorneys billed a combined 28.7 hours related to the preparation of a motion for sanctions which was never filed with the court. Doc. 36-3 at 115.  Specifically, on November 20, Bardsley billed 7.0 hours for calls, emails, and research related to sanctions, and Ryan billed 7.9 hours for correspondence, research and drafting a motion for sanctions.  Id.  Ryan billed 7.0 hours for the sanctions motion on November 23, including research regarding how courts in this circuit have handled motions for sanctions pursuant to Rule 11, and a further 6.8 hours related to the motion for sanctions on November 24.  Id.  The combined 28.7 hours spent in preparing and drafting this motion -- 7.0 hours by Bardsley totaling $4,200.00 (7.0 hours x $600.00) and 21.7 hours by Ryan totaling $8,137.50 (21.7 hours x $375), for a total amount billed of $12,337.50 -- is excessive in light of counsels' experience in similar cases and familiarity with the facts and history of this case, and because the motion was never filed.  I will reduce this figure by half, or $6,168.75.

On November 25, Ryan billed 2.5 hours for preparing and attending a teleconference with the court, which was duplicative of work Bardsley performed.  Doc. 36-3 at 117.  Plaintiff concedes that Ryan's billables should be reduced by 2.5 hours for this work, Doc. 46 at 7, reducing the fees by $937.50 (2.5 hours x $375.00).

In total, fees for November will be reduced by $13,273.13.

3.    December

On December 2, Bardsley billed 1.8 hours for research related to double-billing and preparing to rebut a response to the contempt motion that Defendants never filed.

Doc. 36-3 at 119.  This entry will be disallowed, resulting in a reduction of $1,080.00 (1.8 hours x $600.00).

On December 3, both Bardsley (5.3 hours) and Ryan (5.1 hours) billed for work related to a letter brief to the court, supplementing Plaintiff's motion for an order to show cause why Defendants should not be held in civil contempt of court, even though Defendants did not file any response to the motion.  Doc. 36-3 at 119.  The billables from this related and overlapping work totaled $5,092.50, which I will reduce by half, or $2,546.25.

On December 16, both Bardsley and Ryan billed to review articles in the Philadelphia Inquirer regarding Defendants.  Doc. 36-3 at 120.[11]  These articles have limited relevance to this litigation, and the time billed for their review should be curtailed.  However, because the Billing Statements lump both attorneys' review of the newspaper articles into other, more directly relevant endeavors totaling 5.3 hours for Bardsley and 4.5 hours for Ryan, it is impossible for the court to determine with certainty what amount of those hours should be disallowed.  The Billing Statements describe Ryan's work in part as "receipt and evaluation" of the articles and "evaluation of legal filings in cases cited by Philadelphia Inquirer," and describe Bardsley's work in part as "review of article on Defendants in Inquirer and discussion with reporter regarding allegations and Rahn interview," see id., and therefore I conclude that work associated

---

[11]Plaintiff attached the Philadelphia Inquirer articles to the Bardsley Affidavit at Exh. A, Doc. 36-3 at 25 & 45.  The newspaper articles concern Defendants' history of property developments and various lawsuits resulting therefrom.

with the newspaper articles constituted the majority of the time noted. Accordingly, I will reduce these entries by approximately half, reducing the fees by $1,560.00 for Bardsley ($600.00 per hour x 2.6 hours) and $750.00 for Ryan ($375.00 x 2 hours), for a total reduction of $2,310.00.

Also on December 16, Ryan billed 0.8 hours to attend a telephonic hearing on Plaintiff's motion for a rule to show cause why Defendants should not be held in contempt. Doc. 36-3 at 120. As this work was duplicative of work billed by Bardsley, Plaintiff concedes that Ryan's billables should be reduced by 0.8 hours for this work, Doc. 46 at 7, reducing the fees by $300.00 (0.8 hours x $375.00).

In total, fees for December 2020 will be reduced by $6,236.25.

4. <u>January</u>

Defendants argue that they fully satisfied their obligations to Plaintiff before the end of December, and therefore Plaintiffs are not entitled to any fees incurred in January 2021. Doc. 44 at 20. I disagree. Plaintiff was authorized to file a motion for fees and costs in the Revised Settlement Agreement and by Orders of the court, and because the filing deadline for the motion was February 1, 2021, obviously Plaintiff expended time and effort on the motion in January. Furthermore, it is worth noting that none of the time and effort would have been necessary had Defendants simply complied with their obligations in a timely manner, and without court intervention. Plaintiffs are therefore entitled to fees incurred in January, and I will focus on the reasonableness of those fees as presented in the Billing Statements.

Between January 27 and January 31, Plaintiff's attorneys spent a combined 46.4 hours on the present motion for fees and costs.  Doc. 36-3 at 124-25.  Specifically, on January 27, 28 and 29, respectively, Bardsley billed 7.7 hours, 8.0 hours, and 3.2 hours on the motion and supporting evidence.  Id.  On January 28, Ryan billed 5.1 hours to prepare the Schultz Affidavit, id. at 125, and on January 29, he billed 9.0 hours to complete the Schultz Affidavit and prepare the memorandum of law in support of the motion for frees.  Id.  On January 30, Bardsley spent 7.8 hours on the memorandum of law, and on January 31, Bardsley spent 2.5 hours and Ryan spent 3.1 hours in finalizing the motion.  Id.

The combined 46.4 hours spent in preparing and drafting the present motion for fees and costs -- 29.2 hours by Bardsley totaling $17,520.00 (29.2 hours x $600.00) and 17.2 hours by Ryan totaling $6,450.00 (17.2 hours x $375), for a total amount billed of $23,970.00 -- is excessive in light of counsels' experience in similar cases, because counsel should have known that fees and costs were recoverable only from the date of Defendants' breach of the Revised Settlement Agreement, and because some of the work that went into preparing and drafting the motion for fees and costs was surely duplicative of the 28.7 hours expended on the motion for sanctions that Plaintiff never filed.  Thus, I will reduce this figure by 25%, or $5,992.50, which is the total reduction in fees for January.

   5.    Reply Brief

Lastly, Plaintiff seeks $9,202.50 in fees associated with the preparation of the reply brief filed in support of the motion for fees and costs, based on a total of 16.2

26

attorney hours (13.9 for Bardsley and 2.3 for Ryan).  Doc. 46 at 12.  As Plaintiff

acknowledges, the court neither requested nor required the filing of a reply, but rather the

court granted Plaintiff's request to file the reply via email to all counsel on March 2,

2021.  Id. at 1 n.1.  The only new assertions in the reply brief were a response to

Defendants' argument that Judge Pappert's dismissal order precluded an award of fees

and an acknowledgement that certain fees were duplicative, id. at 6-9, and Plaintiff's

request for fees associated with the reply brief itself.  Id. at 12.  Over 16 hours of attorney

time is excessive and I will limit the recovery for the reply brief to two hours for each

attorney for a total of $1,950.00 (2 x $600.00 + 2 x $375.00).

IV.   **CONCLUSION**

The motion for fees will be granted in part and denied in part.  The motion will be

denied as to fees incurred from the inception of this litigation for what Plaintiff

characterizes as Defendants' and/or Attorney Taylor's dilatory and bad faith conduct

and/or Attorney Taylor's unreasonable and vexatious conduct.  The motion will be

granted in part as to fees and costs incurred for the period from September 9, 2020, to

January 2021, with Plaintiff's request for fees and costs in this category in the amount of

$153,765.00 reduced by $36,194.38,[12] to $117,570.62, plus $1,950.00 for the reply brief,

for a total of $119,520.62.  An appropriate Order follows.

---

[12]The $38,694.38 figure is the sum of the amounts reduced for each period of the Billing Statements, consisting of $10,692.50 (September 9 through October 2020), $13,273.13 (November 2020), $6,236.25 (December 2020), and $5,992.50 (January 2021).